UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Kevin T. Hannon,

         Plaintiff,

vs.                        REPORT AND RECOMMENDATION

John Sanner, Jeffrey
Oxton, Will Brost,
and Vicki Landwehr,

         Defendants.      Civ. No. 02-722 (RHK/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 26th day of January, 2004.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Defendants' Motions for Summary Judgment, and the Plaintiff's cross-Motion for the denial of the Defendants' Motions for Summary Judgment. For these purposes, the Plaintiff has appeared pro se; the Defendant John Sanner ("Sanner") has appeared by Kenneth H. Bayliss, Esq.; and the Defendant Jeffrey Oxton ("Oxton") has appeared by Mark P. Hodkinson, Esq. For reasons which follow, we recommend that the Defendants' Motions for Summary Judgment be

granted, and that the Plaintiff's Motion for the denial of the Defendants' Motions be denied.

## II. Factual and Procedural History

On June 20, 2000, a Jury in the Minnesota District Court for the Seventh Judicial District found the Plaintiff guilty of one Count of premeditated First-Degree Murder, two Counts of Felony Murder (kidnaping), one Count of Felony Murder (arson), and one Count of Second-Degree Intentional Murder, for the killing of Deborah Tolhurst ("Tolhurst"), who was the Plaintiff's girlfriend. In an Order dated December 20, 2001, the Minnesota Supreme Court, considering the matter en banc, reversed the Plaintiff's conviction, and remanded his case for retrial. The Supreme Court held that the Trial Court had erred in admitting the Plaintiff's confession, as the statement had been made after the Plaintiff had unequivocally invoked his right to counsel, and had not knowingly, intelligently, and voluntarily, waived his right to legal counsel. See, State v. Hannon, 636 N.W.2d 796, 807 (Minn. 2001)("Hannon I").

On remand, the Minnesota District Court granted the Plaintiff's pretrial Motion to suppress the State's DNA evidence. The State appealed to the Minnesota Court of Appeals which, on July 1, 2003, reversed the District Court's suppression of the DNA evidence. See, State v. Hannon, 2003 WL 21500311, at *3 (Minn.App., July 1, 2003)("Hannon II"). As a result, criminal charges against

the Plaintiff, for the murder of Tolhurst, are continuing, but the last submission in that case was made on May 29, 2003, prior to the Court's decision in Hannon II, and therefore, there is no indication, in the Record before us, as to whether the Plaintiff has been retried, and if so, what Verdict was reached.

Following the Minnesota Supreme Court's decision, in Hannon I, the Plaintiff filed this lawsuit, naming as Defendants, Sanner, who is the Captain of the Stearns County Police Department; Brost, who is the Assistant County Attorney for Stearns County; Oxton, who is a detective with the St. Cloud Police Department; and Judge Landwehr, who is the Chief Judge of the Seventh Judicial District, and was the Judge who presided over the Plaintiff's Trial. In his Complaint, the Plaintiff asserts three claims. First, he alleges a claim against Sanner and Oxton, for a violation of his Fifth Amendment rights, due to their failure to cease questioning him upon his unequivocal request for counsel. As a remedy, the Plaintiff asks for damages in the amount of $500,000 from each of them, and he also requests that they be suspended pending additional training.

For his second claim, the Plaintiff alleges that Sanner, Oxton, and Brost, tampered with Grand Jury and Trial witnesses, and he seeks damages in the amount $500,000 from both Sanner and Oxton, and $750,000 in damages from Brost. The Plaintiff also asks that

criminal charges be brought against those Defendants, for their purported acts. Lastly, the Plaintiff alleges a claim of judicial misconduct against Judge Landwehr, and seeks one million dollars in damages from her, as well as a review of her conduct by the Board of Judicial Standards.

On February 19, 2003, we issued an Order and Report and Recommendation, in which we considered Oxton's Motion to Stay Proceedings. See, Docket Nos. 25 & 26. As we explained, Oxton premised his Motion to Stay on the doctrine of abstention. However, as we expressed, our consideration of whether to hear the Plaintiff's claims, or to stay the proceedings until the conclusion of the State's criminal action against the Plaintiff, was governed by the doctrine announced in Heck v Humphrey, 512 U.S. 477 (1994). We then related that, under Heck, if we concluded that the Plaintiff's Section 1983 claims had accrued under that doctrine, there would be no reason to stay our hearing of those claims but, if we determined that the Plaintiff's claims had not yet accrued, we would dismiss those claims, under Title 28 U.S.C. §1915(e)(2)(B)(ii), which requires us to dismiss a complaint filed in forma pauperis, if we find, at any time, that it fails to state a claim upon which relief may be granted.

We then concluded that Claim II of the Plaintiff's Complaint, which alleges misconduct relative to witness testimony, by the

Defendants Sanner, Oxton, and Brost, had not yet accrued and, therefore, we recommended its dismissal under the doctrine announced in Heck v. Humphrey. We also determined that Claim III of the Plaintiff's Complaint, which alleges judicial misconduct by Judge Landwehr had not yet accrued and, accordingly, we recommended that Claim III also be dismissed, without prejudice, and that Judge Landwehr's Motions for Dismissal and for Summary Judgment be denied, as moot.

As for Claim I, which is a claim for monetary damages from Sanner and Oxton, for violating the Plaintiff's Fifth Amendment right to counsel, we found that, unquestionably, the Plaintiff's Section 1983 action against these Defendants, on this ground, had accrued. We further explained that the Plaintiff had demonstrated that his conviction was reversed, on direct appeal, for the reasons he advanced in support of his claim for a monetary award against Oxton, and Sanner. We also related that we could conceive of no way in which an award of money damages, predicated on actions that the State Court has already found to be unlawful, would have any impact on the validity of the Plaintiff's retrial when, or if, it occurs. We then added that a decision in the Plaintiff's favor on this claim, would do no more than provide the Plaintiff with a monetary award for an act that a Court of law had already found to

be unlawful. Accordingly, we concluded that, as to the Plaintiff's first claim, the Plaintiff's Section 1983 action had accrued.

On March 11, 2003, the District Court, the Honorable Joan E. Ericksen presiding, issued an Order which adopted our recommendations, and dismissed Claims II and III. See, Docket No. 27.[1] Thus, Claim I is the only remaining claim, and Sanner and Oxton are the only remaining Defendants.

### III. Discussion

A. The Defendants' Motions for Summary Judgment.

1. Standard of Review. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and have found no triable issue. See, Luigino's, Inc. v. Peterson, 317 F.3d 909, 911 (8th Cir. 2003); Duffy v. McPhillips, 276 F.3d 988, 991 (8th Cir. 2002); Schoolhouse Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir.

---

[1] On April 4, 2003, Judge Joan E. Ericksen issued an Order of Disqualification, and the case was reassigned to the District Court, the Honorable Richard H. Kyle presiding. See, Docket No. 28.

2002); Krentz v. Robertson Fire Protection Dist., 228 F.3d 897, 901 (8th Cir. 2000).

For these purposes, a disputed fact is "material," if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine," if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026, 1028 (8th Cir. 2000); Austin v. Minnesota Mining and Manuf. Co., 193 F.3d 992, 995 (8th Cir. 1999); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Peter v. Wedl, 155 F.3d 992, 996 (8th Cir. 1998).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999); Jaurequi v. Carter Manufacturing Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party

- 7 -

has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000); Greer v. Schoop, 141 F.3d 824, 826 (8th Cir. 1998). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.2d 162, 163 (8th Cir. 1993).

    2.    *Legal Analysis*. The Defendants argue that they are entitled to Summary Judgment on three grounds. First, they assert that they violated no Federal law, nor any right guaranteed the Plaintiff by the United States Constitution. They then contend that, even if the Court were to find that the Plaintiff's constitutional rights were violated, the Plaintiff's only remedy for those violations would be the exclusion of the incriminating evidence, and not a claim for monetary relief. Lastly, the Defendants argue that they are entitled to qualified immunity. We address each assertion in turn, commencing with the Defendants' argument that they did not violate any of the Plaintiff's federally protected rights.

a. <u>No Violation of Federal Law</u>. "In order to survive a motion for summary judgment under §1983," a plaintiff must "raise a genuine issue of material fact as to whether (1) [the defendants] acted under color of state law, and (2) the alleged wrongful conduct deprived [the plaintiff] of a constitutionally protected federal right." <u>Dennen v. City of Duluth</u>, 350 F.3d 786, 790 (8th Cir. 2003), citing <u>Kuha v. City of Minnetonka</u>, 328 F.3d 427, 432 (8th Cir. 2003). There is no dispute that, at the time that the Defendants interrogated the Plaintiff, the Defendants were acting under color of State law. Further, the Plaintiff alleges that the Defendants deprived him of his right to counsel, in violation of the Fifth Amendment to the United States Constitution, by failing to cease interrogation once he had requested an attorney.[2]

---

[2]To the extent the Plaintiff has asserted that his right to counsel under the Sixth Amendment to the United States Constitution was violated -- and it is not clear that he has included such an allegation -- the right to counsel under the Sixth Amendment does not attach until the commencement of formal criminal proceedings and, therefore, the Defendants did not violate any rights that were guaranteed the Plaintiff by the Sixth Amendment. See, <u>Texas v. Cobb</u>, 532 U.S. 162, 167 (2001)("The Sixth Amendment right to counsel * * * 'does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings -- whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"), quoting <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 175 (1991); see also <u>United States v. Gouveia</u>, 467 U.S. 180, 185 (1984)("[T]he Sixth Amendment right to counsel attaches only when formal judicial proceedings are initiated against an individual by way of indictment, information, arraignment, or preliminary hearing."); <u>Brown v. Luebbers</u>, 344 F.3d 770, 778 (8th Cir 2003); <u>Von Kahl v. United States</u>, 242 F.3d 783,
(continued...)

Under the Fifth Amendment to the United States Constitution, an accused must be informed of his right to counsel prior to custodial interrogation. See, Miranda v. Arizona, 384 U.S. 436, 471 (1966). Once an accused invokes his right to counsel, interrogation must cease. See, Smith v. Illinois, 469 U.S. 91, 94-95 (1984); see also, United State v. Valdez, 146 F.3d 547, 551 (8th Cir. 1998)("Once an accused requests counsel, no further interrogation may take place until counsel has been made available or 'unless the accused himself initiates further communication, exchanges, or conversations with the police.'"), quoting Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). The United States Supreme Court, in Davis v. United States, 512 U.S. 452, 459 (1994), has held that an invocation of the right to counsel must be clear and uunequivocal. See, Texas v. Cobb, 532 U.S. 162, 175 (2001); United States v. Kelly, 329 F.3d 624, 630 (8th Cir. 2003); United States v. Syslo, 303 F.3d 860, 866 (8th Cir. 2002)("A suspect must clearly and unambiguously request a lawyer in order to trigger his Fifth Amendment right to counsel."); Simmons v. Bowersox, 235 F.3d 1124, 1130 (8th Cir. 2001).

The Defendants argue that, even though the Minnesota Supreme Court held that the Minnesota Trial Court had erred in admitting

---

²(...continued)
789 (8th Cir. 2001); United States v. Ingle, 157 F.3d 1147, 1150 (8th Cir. 1998).

the Plaintiff's confession, by concluding that the statement had been made after the Plaintiff had unequivocally invoked his right to counsel, and had not, thereafter, knowingly, intelligently, and voluntarily, waived that right, in Federal Court, the Plaintiff's confession would not have been suppressed. The Minnesota Supreme Court's decision, in <u>Hannon I</u>, to suppress the Plaintiff's statements was based on State Court precedent established in <u>State v. Munson</u>, 594 N.W.2d 128, 139 (Minn. 1999), where the Court held that the statement, "I think I'd rather talk to a lawyer," was an unequivocal request for counsel. <u>Id.</u> at 804, citing <u>State v. Munson</u>, supra at 139-40. Consequently, the Minnesota Supreme Court found that the Plaintiff's statement,"[c]an I have a drink of water and then lock me up -- I think we really should have an attorney," was similarly an unequivocal request for an attorney. <u>Id.</u>

Under Federal law, however, the Plaintiff's statement that "I think we really should have an attorney," is not an unequivocal request for an attorney. See, <u>Davis v. United States</u>, supra at 458. In <u>Davis</u>, the Supreme Court considered whether a suspect's statement, during the course of official questioning, that "[m]aybe I should talk to a lawyer," was sufficient to invoke a <u>Miranda</u> advisory. The Court concluded that the statement was too equivocal for that purpose, and reasoned as follows:

> Invocation of the Miranda right to counsel "requires, at a minimum, some statement that

- 11 -

> can reasonably be construed to be an expression of a desire for the assistance of an attorney." McNeil v. Wisconsin, 501 U.S. [171,] 178, 111 S.Ct. [2204,] 2209 [(1991)]. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning. See ibid. ("[T]he likelihood that a suspect would wish counsel to be present is not the test for applicability of Edwards"); Edwards v. Arizona, supra, 451 U.S. [477,] 485, 101 S.Ct. [1880,] 1885 [(1981)] (impermissible for authorities "to reinterrogate an accused in custody if he has clearly asserted his right to counsel). Rather, the suspect must unambiguously request counsel. As we have observed, "a statement either is such an assertion of the right to counsel or it is not." Smith v. Illinois, 469 U.S. [91,] 97-98, 105 S.Ct. [490,] 494 [(1984)] (brackets and internal quotation marks omitted). Although a suspect need not "speak with the discrimination of an Oxford don," [Davis v. United States, supra at 2364](Souter, J. concurring in judgment), he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, Edwards does not require that the officers stop questioning the suspect. See Moran v. Burbine, 475 U.S. 412, 433 n. 4, 106 S.Ct. 1138, 1147 n. 4, 89 L.Ed.2d 410 (1986) ("[T]he interrogation must cease until an attorney is present only [i]f the individual states he wants an attorney")(citations and internal quotation marks omitted).

Id.

Here, the Plaintiff's statement that "I think we should really have an attorney" is also too equivocal to constitute an invocation of

the right to counsel under Federal law because the Plaintiff qualified his statement with the phrase "I think." See, <u>Clark v. Murphy</u>, 331 F.3d 1062, 1070 (9th Cir. 2003)(finding that the defendant's statement that "**I think** I would like to talk to a lawyer," was equivocal because the defendant qualified his request with the phrase, "**I think**.")[emphasis supplied]; see also, <u>Dormire v. Wilkinson</u>, 249 F.3d 801, 805 (8th Cir. 2001)(holding that the defendant's "question ['Could I call my lawyer?'] was not [] a clear and unambiguous request for counsel."), citing <u>Diaz v. Senkowski</u>, 76 F.3d 61, 64 (2nd Cir. 1996)("**I think** I want a lawyer" not unequivocal invocation of right to counsel.)[emphasis supplied]; <u>Burket v. Angelone</u>, 208 F.3d 172, 198 (4th Cir.)("**I think** I need a lawyer," is not an unequivocal request for counsel.)[emphasis supplied], cert. denied, 530 U.S. 1283 (2000). Consequently, we find that, as alleged by the Plaintiff, the Defendants did not violate any right guaranteed to him by the Constitution of the United States, or any Federal law. Therefore, we recommend that the Defendants' Motions for Summary Judgment be granted, but in the interests of completeness, we will also address the other grounds on which the Defendants base their Motions.

  b. <u>No Cause of Action for Monetary Relief Under the Fifth Amendment</u>.

  The United States Supreme Court has stated that <u>Miranda</u> warnings are merely prophylactic rules designed to insulate

- 13 -

the exercise of Fifth Amendment rights and, therefore, "'not themselves rights protected by the Constitution.'" Dickerson v. United States, 530 U.S. 428, 436 (2000), quoting Michigan v. Tucker, 417 U.S. 433, 444 (1974); see also, Davis v. United States, supra at 457-458; Withrow v. Williams, 507 U.S. 680, 690-691 (1993)("Miranda's safeguards are not constitutional in character."); Duckworth v. Eagan, 492 U.S. 195, 203 (1989); Connecticut v. Barrett, 479 U.S. 523, 528 (1987)("[T]he Miranda Court adopted prophylactic rules designed to insulate the exercise of Fifth Amendment rights."); Oregon v. Elstad, 470 U.S. 298, 306 (1985); New York v. Quarles, 467 U.S. 649, 653 (1984); Edwards v. Arizona, 451 U.S. 477, 492 (1981). Thus, as our Court of Appeals has held, "[t]he remedy for the alleged Miranda violation is the exclusion from evidence of any compelled self-incrimination, not a civil rights action." Brock v. Logan County Sheriff's Dept. of Arkansas, 3 F.3d 1215, 1217 (8th Cir. 1993), citing Warren v. City of Lincoln, 864 F.2d 1436, 1442 (8th Cir.), cert. denied, 490 U.S. 1091 (1989) ("Thus, the remedy for a Miranda violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action."); see also, Hampton v. Gilmore, 60 F.R.D. 71, 81 (E.D. Mo.), aff'd, 486 F.2d 1407 (8th Cir. 1973); Cota v. Chapa, 2 Fed. Appx. 621, 2001 WL 87449, at *1 (8th Cir., February 2, 2001)("The district court dismissed [the plaintiff's] §1983 claim challenging

his post-arrest interrogation on the ground that the only remedy for a Miranda violation is the exclusion from evidence of any compelled testimony arising therefrom," and "[t]hat is clearly the law of this Circuit."); but see, Cooper v. Dupnik, 963 F.2d 1220, 1223 (9th Cir. 1992)(Holding that a premeditated, patent violation of a suspect's Miranda rights was actionable).

Therefore, even if we had found that the Defendants had failed to comply with the procedural safeguards of Miranda, as established by Federal precedent, a litigant could not maintain a Section 1983 action for violations of those safeguards, as such a violation would not amount to a violation of any substantive constitutionally protected right. As a result, the Defendants are entitled to Summary Judgment on this ground as well.

        c.    <u>The Defendants are Entitled to Qualified Immunity</u>.

Government officials, who are performing discretionary functions, are generally shielded from liability for civil damages, unless their conduct violates clearly established statutory or constitutional rights, of which a reasonable person would have known. See, Wilson v. Layne, 526 U.S. 603, 609 (1999); Young v. Harrison, 284 F.3d 863, 866 (8th Cir. 2002); Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001); Armstrong v. Mille Lacs County Sheriff's Dep't, 228 F. Supp.2d 972, 984 (D. Minn. 2002), aff'd, 63 Fed.Appx. 970, 2003 WL 21212166 (8th Cir., May 27, 2003). In order

"[t]o withstand a claim of qualified immunity at the summary judgment stage, a plaintiff must assert a violation of constitutional or statutory right; that right must have been clearly established at the time of the violation; and given the facts most favorable to the plaintiff, there must be no genuine issue of material fact as to whether a reasonable officer would have known that alleged action indeed violated that right." Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir. 1999); see also, Young v. Harrison, supra at 866-67.

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." Wilson v. Layne, supra at 614. The contours of the constitutional rights at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 641 (1987). As a result, "[t]he doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or

those who knowingly violate the law.'" Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996).

Having found that the Plaintiff did not unequivocally invoke his right to counsel and, correlatively, that the Defendants did not violate the procedural safeguards of Miranda, we conclude that the Defendants did not violate any of the Plaintiff's constitutionally protected rights. Therefore, the Defendants are entitled to qualified immunity. See, Chavez v. Martinez, 538 U.S. 760, 777 (2003)("In deciding whether an officer is entitled to qualified immunity, we must first determine whether the officer's alleged conduct violated a constitutional right"; "[i]f not, the officer is entitled to qualified immunity, and we need not consider whether the asserted right was 'clearly established.'")[internal citation omitted]. Accordingly, the Defendants' Motions for Summary Judgment should also be granted on qualified immunity grounds.

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the Motion of the Defendant Oxton for Summary Judgment [Docket No. 29] be granted.

2. That the Motion of the Defendant Sanner for Summary Judgment [Docket No. 31] be granted.

3. That the Plaintiff's Motion for denial of the Defendants' Motions for Summary Judgment [Docket No. 35] be denied.

_____
Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Federal Rule of Civil Procedure 6(a), D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 12, 2004**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of the Hearing by no later than **February 12, 2004,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.